## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES JEROME JORDAN,**

      **Plaintiff,**

**v.**                                              **Civil Action No. 5:16cv31**
                                                           **(Judge Stamp)**

**FEDERAL BUREAU OF PRISONS;**
**ANTHONY. MORI, Unit Manager;**
**KATHY LANE, Warden; and MELISSA**
**WILSON, Correctional Counselor,**

      **Defendants.**

### REPORT AND RECOMMENDATION

### I. Procedural History

      On March 14, 2016, the *pro se* Plaintiff, an inmate at FCI Hazelton, initiated this case by filing a Bivens[1] civil rights complaint against the above-named Defendants. ECF No. 1. Along with his complaint he filed a motion to proceed as a pauper with supporting documents. ECF Nos. 2, 3, & 4.  The Plaintiff was granted permission to proceed as a pauper on March 16, 2016 and paid his initial partial filing fee on April 4, 2016. ECF Nos. 6 & 9.

      Upon initial review, it was unclear whether Plaintiff was attempting to file a Bivens civil rights complaint, a complaint under the Federal Tort Claim Act ("FTCA"), or both. Accordingly, by Order entered April 26, 2016, Plaintiff was directed to clarify his claim and complete a notification to the court regarding his wishes. ECF No. 13. On May 5, 2016, Plaintiff returned the notification. ECF No. 16. By Order entered May 24, 2016, the Clerk of Court was directed to send Plaintiff a court-approved form FTCA packet to complete and return.[2] ECF No. 18.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Plaintiff's FTCA complaint was filed on June 6, 2016 as Case No. 1:16cv108.  It was dismissed without prejudice on October 18, 2016, for Plaintiff's failure to prosecute.

On July 20, 2016, Magistrate Judge James E. Seibert conducted a preliminary review of the file, determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the complaint. Accordingly, an order to answer was entered. ECF No. 22. On September 23, 2016, the Defendants moved for an extension of time. ECF No. 33. By Order entered September 27, 2016, the extension was granted. ECF No. 34. On November 14, 2016, the Defendants moved for a second extension of time. ECF No. 38. By Order entered the following day, the extension was granted. ECF No. 39. On December 13, 2016, the Defendants moved for a third extension of time. ECF No. 41. By Order entered December 14, 2016, the third extension was granted. ECF No. 42. On December 23, 2016, the Defendants moved to substitute defendants and clarify the electronic document. ECF No. 45. By Order entered January 3, 2017, Defendants' motion was granted. ECF No. 46. On January 10, 2017, the Defendants filed their fourth motion for an extension of time. ECF No. 50. On January 12, 2017, Plaintiff filed a motion for appointed counsel. ECF No. 49. By Order entered the same day, the Defendants' fourth motion for an extension of time was granted. ECF No. 50. Plaintiff filed a second motion for appointed counsel on January 18, 2017. ECF No. 52. On January 19, 2017, Plaintiff filed objections to the Order granting Defendants' fourth extension. ECF No. 54. By Order entered January 24, 2017, Plaintiff's first and second motions for appointed counsel were denied. ECF No. 58. On March 6, 2017, the Defendants filed an Answer. ECF No. 64. On March 20, 2017, Plaintiff filed a response. ECF No. 65. On March 21, 2017, Plaintiff filed a letter motion to renew his motion for appointed counsel. ECF No. 66.

On March 29, 2017, the Defendants filed a Motion to Dismiss or Alternatively, Motion for Summary Judgment, along with a memorandum in support, attaching numerous affidavits. ECF Nos. 67 & 68. By Order entered April 5, 2017, Plaintiff's third motion for appointed

counsel was denied. ECF No. 69. That same day, because Plaintiff was proceeding *pro se,* the Court issued a <u>Roseboro</u> Notice.  ECF No. 71.  On April 24, 2017, Plaintiff filed his response in opposition. ECF No. 73.  By Order entered on September 15, 2017, this case was reassigned from Magistrate Judge James E. Seibert to Magistrate Judge Michael J. Aloi.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendant's dispositive motion.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

In his complaint, Plaintiff raises claims against the Defendants for abuse of authority, harassment, interfering with the filing of his administrative grievances by "making them disappear" and conspiring to harass him in retaliation for filing grievances, by constantly moving his cell and removing his relatives from his visiting list. ECF No. 1 at 7; <u>see also</u> ECF No. 1-1 at 1 – 3.

The Plaintiff contends that he exhausted his administrative remedies, indicating that he filed grievances at all three levels.  ECF No. 1 at 4 – 5; <u>see also</u> ECF No. 1-1 at 3. He attaches copies of his grievances, which appear to indicate that at least some of them were rejected for various reasons, with directions to him to re-submit.  <u>See</u> ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, & 1-7.

As relief, he requests that the court "fined [sic] and charge the F.B.O.P., Ms. Mori [sic], Ms. Wilson, and A.W. Laneley[3] [sic] for these violations" and award him "$450,000.00 in monetary damages and each officer's bonds covering their performance and prohibitions of

---

[3] "A.W. Laneley" has since been identified as Defendant Kathy Lane, who was then the Associate Warden at FCC Hazelton.

Constitutional Guarantees to Article One of United States Constitution ReDress [sic] of Grievances [sic]." Id. at 9.

**B. <u>Defendant's Answer</u>**

Defendants assert that Plaintiff filed only one claim, but that he filed without fully exhausting his administrative remedies and his complaint fails to present any legally cognizable claims. ECF No. 64 at 1 - 2. Further, they argue that the complaint does not identify any Defendant that is subject to <u>Bivens</u> liability and Plaintiff has not shown that his constitutional rights were violated. Id. at 3.

**C. <u>Plaintiff's Response</u>**

Plaintiff argues that Defendant's statements are false and intended to deceive the Court. ECF No. 65 at 2. He insists he has raised four claims, not one; enumerates them; and attempts to refute Defendants' contention that he did not fully exhaust his administrative remedies, asserting that Defendants' argument otherwise is "frivolous" and lacks merit. Id. at 2 – 3. He insists that he exhausted what administrative remedies were available to him, but implies that the grievance process was rendered unavailable to him because the BOP's responses were incomplete and confusing. Id. at 3 – 4. Finally, he contends that the Defendants' answer and affirmative defenses are "moot" and have no merit. Id. at 6.

**D. <u>Defendant's Motion to Dismiss or Alternatively, Motion for Summary Judgment</u>**

Defendants argue that the complaint should be dismissed or summary judgment be granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 68 at 1 - 2.

2) Even if Plaintiff had administratively exhausted his claims, his factual allegations are wholly unsupported, thus he has not presented cognizable claims. Id. at 9.

3) The BOP is not a proper <u>Bivens</u> defendant.  <u>Id.</u> at 10 - 11.

4) Plaintiff has not established that Defendant Kathy Lane participated in, ignored, or tacitly approved of any conduct that violated Plaintiff's rights, thus her supervisory authority as Acting Warden is insufficient to subject her to <u>Bivens</u> liability.

5) The Defendants are entitled to qualified immunity. <u>Id.</u> at 12.

6) Plaintiff has not presented a viable claim of retaliation. <u>Id.</u> at 13.

The Defendants also attach affidavits from Howard Williams, Legal Assistant and Administrative Remedy Clerk at the BOP's Mid-Atlantic Regional Office ("Williams Decl."), from Defendant Melissa Wilson, Correctional Counselor at FCC Hazelton ("Wilson Decl."); from non-party James Fahey, Case Manager at FCC Hazelton ("Fahey Decl."); from Defendant Anthony Mori, Unit Manager at FCC Hazelton ("Mori Decl."); from non-party Shawnee Shockey, secretary to the Associate Warden at FCC Hazelton ("Shockey Decl."); and from Defendant Kathy Lane, former Associate Warden at FCC Hazelton ("Lane Decl."),  in support of its arguments. <u>See</u> ECF Nos. 68-1, 68-2, 68-3, 68-4, 68-5, & 68-6.

**E. <u>Plaintiff's Response in Opposition</u>**

Plaintiff first objects to Defendants' inclusion of information regarding his underlying criminal charges and sentencing as irrelevant, as an attempt to make him look bad, and as an attempt to mislead the courts. ECF No. 73 at 1 – 2. He then reiterates his arguments and attempts to refute the Defendant's on the same.  <u>Id.</u> at 3 – 13.

## III. <u>Standard of Review</u>

**A. <u>Motion to Dismiss</u>**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to

5

support his or her allegations. <u>Revene v. Charles County Comm'rs.</u>, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u>; <u>see also</u> <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id.</u>

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); <u>Haines v.</u>

Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978);

Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less

stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less

stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated

liberal construction means only that if the Court can reasonably read the pleadings to state a valid

claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128

(10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her.

Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never

squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a

court may not consider any documents that are outside of the complaint, or not expressly

incorporated therein, unless the motion is converted into one for summary judgment. Alternative

Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval

in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are,

however, exceptions to the rule that a court may not consider any documents outside of the

complaint. Specifically, a court may consider official public records, "documents incorporated

into the complaint by reference, and matters of which the court may take judicial notice," or

sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc.,

637 F.3d 462 (4th Cir. 2011).

However, when, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied

by affidavits, exhibits and other documents to be considered by the Court, the motion will be

construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### III. Analysis

8

## A. **Federal Bureau of Prisons**

This action is being analyzed pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). However, a Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F. 3d 1204 (10th Cir. 2003). Accordingly, the Federal Bureau of Prisons ("BOP") is not a proper defendant, and the complaint must be dismissed as to the BOP.

## B. **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality

---

[4] Porter, 534 U.S. at 524.

of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[5] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the

---

[5] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under §1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's complaint asserts that he filed a BP-8 and a BP-9 in June, 2015 against Ms. Wilson for harassment and abuse of authority.  ECF No. 1-1 at 2.  He contends that he gave the BP-9 to Case Manager Mr. Fahey, and that subsequently, Mr. Mori, his Unit Manager at the time, told him that he had received the BP-9.  Id.  Then, Plaintiff contends, the BP-8 & BP9 "disappeared." Id. Because of this, in effect, he argues that Mr. Mori interfered with his right of access to the court by "hindering" his grievance process.  Id. Further, Plaintiff avers that he has "requested numerous times for materials (BP-9) so I could start my grievance to the courts" but has been unsuccessful.  Id. In support of this, he asserts that he "emailed constantly, A.W. Lanely

[sic], [and] the new Warden Saad," and that he "talked to the Captain, [t]he AW[6] and the new unit manager Ms. Smith."   Id. at 2.  He avers that in September, 2015, he was finally provided with a BP-9, which he filed on September 11, 2015, to initiate the grievance process over staff interference with his accessing the grievance process. Id. at 1. He received his response on September 16, 2015, and on November 2, 2015, he filed a BP-10, receiving a November 10, 2015 response saying that the issue was not sensitive and that he had failed to file a BP-9, "which is false." Id. He then filed a BP-11 on December 3, 2015, receiving a response to it on January 11, 2016.  Id.  He argues that the response to the BP-9 was incomplete, "therefore, the whole grievance process has been unavailable to" him.  Id.  Plaintiff relies on Nunez v Duncan[7] and Young v. Good,[8] presumably for the proposition that the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." Id. at 2.

In their answer to the complaint, the Defendants assert the affirmative defense that Plaintiff filed suit without first fully exhausting his administrative remedies as required by the PLRA. ECF No. 64 at 2.

In response, Plaintiff reiterates his recitation of the history of the grievance process he initiated on September 11, 2015 with the filing of a BP-9 [ECF No. 65 at 3] before concluding that the

> response to the BP-9 is incomplete, plus marked sensitive, the response to the BP-10 is going against the sensitive mark on the BP-9, and the response to the BP-11 is only attended to [sic – "intended to"] add to the confusion caused by these administrative remedies.  But yet and still, Plaintiff has placed each level of the appeal process on notice of his intent . . . the grievance process has been un-available to Plaintiff.  The BP-9 is incomplete.

---

[6] By "AW," the undersigned presumes Plaintiff is referring to the Associate Warden.

[7] Nunez v Duncan, 591 F3d 1217, 1226 (9th Cir. 2010).

[8] Young v. Good, 2008 U.S. Dist. LEXIS 89179 (W.D. Pa. 2008)

<u>Id.</u> at 4.  Therefore, he argues that the "existing and generally available administrative remedies [were] effectively un[]available to him." <u>Id.</u> at 5.

In its memorandum in support of its dispositive motion, the Defendant asserts that there is no record of Plaintiff ever filing any grievances alleging that Defendant Melissa Wilson abused her authority or harassed him, let alone of Plaintiff ever filing any grievances at FCC Hazelton at all in June, 2015.  <u>See</u> ECF No. 68 at 10; <u>see also</u> Williams Decl. ECF No. 68-1 at 5. Defendants aver that Plaintiff filed twenty grievances at other federal prisons before he arrived at FCC Hazelton. <u>Id.</u> at 2; <u>see also</u> Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 15 – 16. Further, Defendants assert that Plaintiff's administrative remedy history does not show that he filed any grievances at all at FCC Hazelton between April, 2014 and September, 2015. Williams Decl. ECF No. 68-1 at 5. Defendants aver that Plaintiff filed six grievances while at FCC Hazelton; one of those, grievance # 888270-F1, filed on January 11, 2017, complained that a correctional officer verbally assaulted him [ECF No. 68 at 2]; it was closed at FCC Hazelton on February 2, 2017. ECF No. 68-1 at 6; <u>see also</u> Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16, and Williams Decl., ECF No. 68-1 at 6. Plaintiff's remaining five FCC Hazelton grievances each alleged that staff members were not processing his informal BP-8 administrative grievance forms [ECF No. 68 at 2], and each of those grievances was rejected at the respective level of the BOP administrative grievance process to which they were submitted. ECF No. 68-1 at 6.

Specifically, Defendants aver that on September 16, 2015, Plaintiff filed administrative grievance # 835680-F 1 at FCC Hazelton, alleging that staff members were not processing his administrative grievance forms. Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16. Plaintiff marked this grievance as sensitive. <u>See</u> Administrative Grievance #

835680-Fl, Full Screen Format, ECF No. 68-1 at 36. Federal regulations specifically authorize inmates to submit sensitive grievances directly to the BOP Regional Director. 28 C.F.R. § 542.14(d)(l). An inmate is authorized to designate a grievance as sensitive if he reasonably believes that "the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." Id. Because Jordan marked his grievance as sensitive, it was rejected the same day it was received, and he was specifically advised that: "[i]f you feel the issue is sensitive, you need to file directly to the regional director." See ECF No. 68-1 at 36.

On September 23, 2015, Jordan appealed his grievance by submitting administrative remedy # 835680-Rl to the BOP Regional Director for the Mid-Atlantic Region. See Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16. The Regional Director rejected the submission because it was unsigned, and because Plaintiff did not supply a copy of the Warden's response to his institutional grievance. See Administrative Grievance # 835680-Rl Full Screen Format, ECF No. 68-1 at 39.

On October 26, 2015, Plaintiff resubmitted his grievance to the BOP Regional Director for the Mid-Atlantic Region using remedy # 835680-R2. See Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16. The Regional Director again rejected the submission because Plaintiff had not submitted his request on the proper form and had failed to supply a copy of the Warden's response to his institutional grievance. See Administrative Grievance # 835680-R2, Full Screen Format, ECF No. 68-1 at 42.

On November 10, 2015, Plaintiff again resubmitted his request to the BOP Regional Director for the Mid-Atlantic Region via remedy # 835680-R3. See Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16. Federal regulations authorize inmates to submit sensitive grievances directly to the BOP Regional Director. 28 C.F.R. § 542.14(d)(l ). The Regional

Director will accept a grievance that has been marked as sensitive only if "the Regional Administrative Remedy Coordinator agrees that the Request is sensitive." Id. Otherwise, the Regional Director will reject the grievance and the inmate may pursue the matter by filing an institutional grievance to the Warden of his federal correctional facility. Id. In this instance, the Regional Director rejected Plaintiff's submission because Plaintiff had not provided a copy of the Warden's response to his institutional grievance, and because Plaintiff marked his grievance as sensitive, when the BOP Mid-Atlantic Regional Director had determined that the grievance was not, in fact, sensitive, and should therefore have been properly submitted to the Warden of Plaintiff's institution. See Administrative Grievance # 835680-R3, Full Screen Format, ECF No. 681 at 45.

On December 9, 2015, Jordan appealed his grievance to the BOP General Counsel using remedy # 835680-Al. See Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16. The BOP General Counsel rejected Jordan's appeal, advising him that because his grievance was rejected, and not actually denied by the BOP Regional Director, he could not appeal it to the BOP General Counsel until it *was* denied. See Administrative Grievance 835680-Al, Full Screen Format, ECF No. 68-1 at 48. Further, the BOP General Counsel advised Plaintiff to follow the Regional Director's directions and resubmit the grievance at the appropriate level, i.e., to the Warden at his federal correctional facility. Id. Nonetheless, Plaintiff never resubmitted the grievance, as instructed by both the BOP Regional Director and General Counsel.  ECF No. 68 at 3; see also Williams Decl., ECF No. 68-1 at 8, ¶25 and Administrative Remedy Generalized Retrieval Sanitized Format, ECF No. 68-1 at 16.

The sworn declaration of James Fahey, BOP Case Manager, avers that while he is generally familiar with Plaintiff, he was never assigned to be Plaintiff's Case Manager. Fahey Decl., ECF No. 68-3 at 1.  He is aware that Plaintiff alleges that in June, 2015, he handed Fahey

a BP-9 alleging that Defendant Melissa Wilson was purportedly abusing her authority and harassing Plaintiff. Id. Nonetheless, Fahey avers that he has no specific recollection of ever receiving a BP-9 from Plaintiff and was unaware of Plaintiff's allegations against Wilson and unaware that Plaintiff alleged he had tried to submit grievances over the issue until after Plaintiff filed suit. Id. at 2. He contends that when a FCC Hazelton inmate hands a BP-9 form to a staff member, those forms are collected and collectively delivered to the Associate Warden's secretary. Id. He avers that if Plaintiff had ever handed him a BP-9, he would have followed protocol and placed it in the group of forms to be collectively delivered to the Associate Warden's secretary. Id.

The sworn declaration of Shawnee Shockey, the secretary to FCC Hazelton's Associate Warden, avers that she receives and logs all form administrative grievances filed by FCC Hazelton inmates. Shockey Decl., ECF No. 68-5 at 1. She avers that she is aware that Plaintiff alleges that he filed a grievance in June, 2015, alleging that FCC Hazelton staff member Melissa Wilson abused her authority and harassed him. Id. She has reviewed the electronic system used to log and organize FCC Hazelton inmates' BP-9 forms, and it does not reflect that Plaintiff ever filed a BP-9 in June, 2015. Id. Moreover, the electronic log system also does not reflect that Plaintiff ever filed any grievance alleging that Wilson abused her authority and harassed him. Id. at 2. The electronic log does reflect that Plaintiff filed two BP-9s, one in September, 2015, alleging that staff members were not processing his BP-8s, and another in January, 2017, alleging that a correctional officer in the Special Housing Unit ("SHU") had verbally assaulted him. Id. at 2.

Defendant Lane's sworn declaration avers that she is aware that Plaintiff alleges that while she was Associate Warden at FCC Hazelton, Plaintiff emailed her regarding his complaints

and that Plaintiff alleges that she was aware that FCC Hazelton staff were retaliating against him and obstructing his access to the administrative grievance system; she denies these allegations. See Lane Decl., ECF No. 68-6 at 2. She does not specifically recall Plaintiff and does not recall ever receiving emails from him or speaking to him. Id.  As Associate Warden, she was not responsible for administering the grievance program or for processing specific inmate grievances, because those duties are delegated to other facility staff members. Id. She further avers that at no time during her FCC Hazelton employment was she ever aware that any staff members were attempting to interfere with Plaintiff's ability to access the grievance system or otherwise infringe on his constitutional rights. Id.

Defendant Mori's sworn declaration avers that while he is aware that Plaintiff alleges that he received a BP-9 from Plaintiff in June, 2015 regarding Wilson's alleged harassment, and that he is aware that Plaintiff alleges that Mori specifically told Plaintiff that he did receive his BP-9, and that thereafter, Plaintiff alleges that he made Plaintiff's grievances "disappear," but he denies the allegations. See Mori Decl., ECF No. 68-4 at 1.  Mori further asserts that he was the Unit Manager for Plaintiff's "N Housing Unit" in June, 2015, that he knew Plaintiff, and that at FCC Hazelton, inmates can request informal resolution via a BP-8; if they do so, the BP-8 is then collected and delivered to that inmate's assigned counselor. Id. at 2. However, inmates at FCC Hazelton are not required to attempt informal resolution and can proceed directly to a BP-9, which would be collected and delivered to the Associate Warden's secretary. Id.  Further, he avers, a FCC Hazelton inmate can give their administrative grievance to any FCC Hazelton staff member; that staff member is then responsible for properly delivering the form for appropriate processing.  Id.  He avers that he has no recollection of Plaintiff ever giving him any administrative grievance; ever receiving any administrative grievance that Plaintiff wrote; or

ever telling Plaintiff that he received any administrative grievance that Plaintiff submitted. Id. If he had received a BP-8 from Plaintiff, he would have ensured that it was collected and delivered to Plaintiff's counselor, and that if he had received a BP-9 from Plaintiff, he would have placed it with the group of forms to be collectively delivered to the Associate Warden. Id. He denies ever destroying, hiding, or refusing any grievance Plaintiff submitted, or ever otherwise hindering Plaintiff's ability to file the same.  Id.   He contends he was unaware that Plaintiff alleged that Defendant Wilson abused her authority and harassed him until Plaintiff filed this lawsuit, and was unaware of Plaintiff's allegations that Plaintiff had attempted to file grievances against Wilson until this suit was filed.  Id. at 3.

Finally, the sworn declaration of Defendant Melissa Wilson avers in pertinent part that when an inmate arrives at FCC Hazelton, they are assigned a specific counselor who is generally responsible for managing that inmate's visitation privileges, work assignments, and financial obligations.  Wilson Decl., ECF No. 68-2 at 1 – 2.  However, any inmate may present general questions to any counselor who is physically present in that inmate's housing unit. Id. at 2.  She avers that she is generally familiar with Plaintiff but has never been assigned as his specific counselor. Id. However, in June, 2015, she worked in the "N Housing Unit" where Plaintiff was incarcerated, thus, she interacted with him and answered many of his general questions. Id.  She was unaware that Plaintiff allegedly attempted to file grievances against her in June, 2015, until he filed this case. Id.  She avers that Plaintiff never told her he intended to assert a grievance against her and Plaintiff never asked her for a BP-8 or BP-9 form.  Id. She avers that as a counselor, she frequently and freely distributes grievance forms to inmates; she has never withheld forms from Plaintiff or any other inmate.  Id. If Plaintiff had asked her for such a form, she would have provided it. Id.  As a counselor, inmates frequently give her completed grievance

forms; BP-8s are collected and are ultimately tracked by the inmate's assigned counselor; a BP-9 grievance is collected for delivery to the Associate Warden's secretary. Id. at 3.  She avers that she has no recollection of Plaintiff ever giving her a completed grievance form, and that if he had, she would have ensured that it was delivered to the appropriate staff member for processing. Id. She specifically denies hiding or destroying a grievance from Plaintiff, or otherwise ever interfering with Plaintiff's use of the grievance process.  Id.  Finally, she was unaware of Plaintiff's allegations regarding filing grievances against her for harassment and abuse of authority until after Plaintiff filed suit. Id.

In his response in opposition to the Defendants' dispositive motion, Plaintiff argues that "of course records wouldn't show June's [grievance] filings because Anthony Mori interfered by not processing the grievance forms." ECF No. 73 at 5 – 6 & 9. Further, he argues that "the response to the BP-9, listed as 'remark' . . . is incomplete also, marked by the Warden's office as 'sensitive,' therefore these circumstances render administrative remedies "effectively unavailable." Id. at 7.  He attempts to refute Defendants' contention that he is the one who marked this grievance as sensitive, stating that that "is a lie" because he simply asked if the BP-9 be marked as sensitive, and it was the Warden's office who marked the BP-9 as sensitive. Id. at 7 – 8. He also argues that Defendants' contention that the BP-9 was rejected because he had marked his grievance as sensitive, "is another lie, and attempt to disrupt court procedures." Id. at 8.  He reiterates his claim that when he filed a BP-8 and BP-9 against Wilson for harassment and abuse of authority, and Defendant Mori did not submit them, Mori interfered with his "petition by hind[]rance" and interfered with his constitutionally protected rights.  Id. at 10.

Despite Plaintiff's arguments that he exhausted all of the administrative remedies that were available to him, it is apparent from a thorough review of the record that Plaintiff

nonetheless implicitly admits that he did not *fully* exhaust his grievances before filing suit, because he admits that at least some of his grievances regarding staff interference with his filing his BP-8s were *rejected*, not denied.  Further, Plaintiff's responses conspicuously fail to address the fact that his grievances were rejected because he never complied with the instructions provided in the responses, despite being repeatedly instructed to do so.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances.  See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004).  But see Larkin v. Galloway, 266 F.3d 718, 723-24

(7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Regarding Plaintiff's claim of having submitted a BP-8 and a BP-9 in June, 2015, an inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. Title 28 C.F.R.§542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9) to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). This Plaintiff apparently did not do.  Plaintiff's allegation that he filed grievances in June, 2015 that "disappeared" has no merit. The sworn declarations of the each of the Defendants and the other BOP staff, and the Administrative Remedy Generalized Retrieval Sanitized Format all contradict Plaintiff's unsupported allegations.  The Plaintiff has not provided the Court with anything to refute these sworn declarations.  Generally unsworn statements without more are not admissible on summary judgment to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (4th Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001). Further, it is apparent from a careful review of the record that by the time he arrived at FCC Hazelton on March 16, 2015 [see ECF No. 68-1 at 2], Plaintiff was already well-acquainted with the grievance process' requirement of exhaustion at each level before proceeding to the next, having filed twenty grievances elsewhere

prior to his arrival.  Moreover, while Plaintiff apparently had no difficulty in producing copies of the grievances he filed in September – December, 2015 over staff interference with his filing BP-8s, it is noteworthy that Plaintiff has not produced copies of the BP-8 and BP-9 he alleges he filed in June, 2015 regarding Wilson's abuse of authority and harassment.  Accordingly, balancing the plaintiff's bald assertions against the sworn declarations, the undersigned gives no credible weight to the same.

Moreover, as for the grievances Plaintiff began in mid-September 2015, asserting staff interference with processing his BP-8s, a thorough review of the record indicates that Plaintiff's failure to exhaust was due to his own actions in repeatedly failing to follow the directions given in the rejection notices at each level. While Plaintiff alleges that the grievance process was intended to be confusing, it does not excuse his failure to follow the clear directives to correct his grievances and properly resubmit them, nor does it render the grievance process "unavailable," as defined by Ross, *supra*, 136 S.Ct. at 1859 – 60. The rejection notices for each of Plaintiff's remedies under # 835680 advised that the grievances were being rejected and gave specific directions as to how to correct the issue. Plaintiff simply did not follow the directions.  Finally, in the last attempt, remedy # 835680-A1, he was clearly advised "[a] rejection is not a denial.  **You must have a denial prior to appealing the next level.  Follow directions and resubmit appeal at the region institution level**."  ECF No. 68-1 at 48 9 (emphasis added).  Nonetheless, instead of correcting his error and beginning again, Plaintiff disregarded the instruction and did not resubmit.  His failure to exhaust cannot be blamed on "unavailable" remedies, but can only be attributed to his own failure to follow directions.

Finally, Plaintiff's reliance on Nunez and Young is misplaced. Not only are the cases not Fourth Circuit precedent, here, Plaintiff's allegations of interference with his access to the

grievance process are wholly unsupported, unlike those of the plaintiff in <u>Nunez</u>.[9]   Likewise, Plaintiff's suggestion that like the plaintiff in <u>Young v. Good</u>, 2008 U.S. Dist. LEXIS 89179 at *9, he has exhausted all of the administrative remedies that were available to him, here, Plaintiff's allegations that the administrative remedy forms or the process itself was unavailable to him simply have no support in the record.

Accordingly, the undersigned finds Plaintiff's bare allegation that Defendant refused to provide him with grievance forms, or that his completed grievance forms "disappeared" lacks credibility. Plaintiff makes no claim that Defendant or any other prison official ever threatened him with violence to discourage him from filing grievances.  Accordingly, consistent with <u>Custis v. Davis</u>, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now do so under the BOP's administrative remedy procedure;[10] therefore, his claims should be dismissed with prejudice.  <u>See</u> 28 C.F.R. § 542.10, *et seq*.

## V. <u>Recommendation</u>

For the reasons stated above, the undersigned hereby recommends that Defendant's Motion to Dismiss or Alternatively, Motion for Summary Judgment [ECF No. 67] be

---

[9] In <u>Nunez</u>, in an attempt to exhaust a claim, the prisoner plaintiff had repeatedly attempted to obtain a particular (and unavailable) BOP Program Statement identified incorrectly by the Warden. The Ninth Circuit held that Nunez's attempts to exhaust the claim were repeatedly stymied by the Warden's unintentional and mistaken identification of the BOP Program Statement at issue, and that the BOP's subsequent failure to correct that mistake undermined all three benefits of the exhaustion requirement.  Accordingly, as that particular grievance only, Nunez's failure to exhaust was excused because the Warden and BOP's actions rendered his administrative remedies effectively unavailable.  <u>See</u> Nunez, 591 F.3d at * 24 - 2.

[10] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9)**, within 20 calendar days of the date of the occurrence on which the complaint is based**. <u>See</u> 28 C.F.R. § 542.10, *et seq.*  (emphasis added).

**GRANTED** and Plaintiff's complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is further directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court.  The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: December 12, 2017

/s/ *Michael J. Aloi*
Michael J. Aloi
UNITED STATES MAGISTRATE JUDGE